ERIC KENNEDY (SBN: 228393)
ekennedy@buchalter.com
C. PAUL BELVA (SBN: 330705)
pbelva@buchalter.com
BUCHALTER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Tel.: 949.760.1121
Fax: 949.720.0182

Attorneys for Plaintiffs
SABRA HEALTH CARE
HOLDINGS V, LLC; SABRA
BEDFORD HILLS, LLC; SABRA
HEALTH CARE NORTHEAST,
LLC; LANGDON PLACE OF
DOVER; LANGDON PLACE OF
KEENE LIMITED PARTNERSHIP;
and L.P.E.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SABRA HEALTH CARE HOLDINGS V, LLC, a limited liability company registered in Delaware; SABRA BEDFORD HILLS, LLC, a limited liability company registered in Delaware; SABRA HEALTH CARE NORTHEAST, LLC, a limited liability company registered in Delaware; LANGDON PLACE OF DOVER, a New Hampshire general partnership; LANGDON PLACE OF KEENE LIMITED PARTNERSHIP, a New Hampshire limited partnership; and L.P.E., a New Hampshire general partnership, <br><br> Plaintiffs, <br><br> vs. <br><br> GENESIS HEALTHCARE, INC., a Delaware corporation; and DOES 1-10, <br><br> Defendant. | CASE NO.: <br><br> **COMPLAINT FOR BREACH OF CONTRACT** <br><br> [DEMAND FOR JURY TRIAL] |

Plaintiffs Sabra Health Care Holdings V, LLC ("SHCHV") Sabra Bedford Hills, LLC ("SBH"); Sabra Health Care Northeast, LLC ("SHCN"); Langdon Place of Dover ("LP Dover"); Langdon Place of Keene Limited Partnership ("LP Keene"); and L.P.E. (collectively, "Plaintiffs") allege:

## INTRODUCTION

1.      Plaintiffs, all of them, are subsidiaries wholly owned and operated by Sabra Health Care REIT, Inc. ("Sabra REIT"), a Maryland Corporation with its headquarters in Irvine, California.

2.      Plaintiffs are landlords under six commercial leases. Defendant is the guarantor under the Guaranty of Lease, as amended and restated if applicable (the "Guaranty"), corresponding to each lease. Though the obligations under each lease are separate and distinct, the terms of the Guaranty for each lease are identical. The tenants have defaulted on their obligations to pay rent and other related sums owed under their respective leases. As the Guarantor, Defendant is obligated to fulfill the tenants' obligations in this regard.

3.      Plaintiffs are informed and believe, and based thereon allege, that Defendant is the parent corporation for each tenant and all rents are paid from a single bank account.

4.      On June 12, 2023, Plaintiffs sent notices of default to Defendant demanding that Defendant fulfill its contractual obligations as the Guarantor. Defendant failed to do so. Plaintiffs therefore seek all remedies available under each respective Guaranty.

## PARTIES

5.      Plaintiffs SHCHV is limited liability company[1] registered in Delaware and a third-tier subsidiary of Sabra REIT. SHCHV's sole member is Sabra Health Care I, LLC, a limited liability company registered in Delaware. Sabra Health Care

---

[1] For purposes of diversity jurisdiction, a limited liability company is a citizen of every state of which its members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir., 2006).

I, LLC's sole member is Sabra Health Care Limited Partnership, a limited partnership[2] registered in Delaware, whose sole limited partner is Sabra Health Care, L.L.C., a limited liability company registered in Delaware, and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

6.    Plaintiff SBH is a limited liability company registered in Delaware and a fourth-tier subsidiary of Sabra REIT. SBH's sole member is Sabra Health Care II, LLC, a limited liability company registered in Delaware. Sabra Health Care II, LLC's sole member is Sabra Health Care I, LLC. Sabra Health Care I, LLC's sole member is Sabra Health Care Limited Partnership, whose sole limited partner is Sabra Health Care, L.L.C., and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

7.    Plaintiff SHCN is a limited liability company registered in Delaware and a second-tier subsidiary of Sabra REIT. SHCN's sole member is Sabra Health Care Limited Partnership, whose limited partner is Sabra Health Care, L.L.C., and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

8.    Plaintiff LP Dover is a general partnership registered in New Hampshire and a fourth-tier subsidiary of Sabra REIT. LP Dover's partners are Sabra Health Care Holdings II, LLC and Sabra Health Care Holdings I, LLC. Sabra Health Care II, LLC's sole member is Sabra Health Care I, LLC. Sabra Health Care I, LLC's sole member is Sabra Health Care Limited Partnership, whose sole limited partner is Sabra Health Care, L.L.C., and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

9.    Plaintiff LP Keene is a limited partnership registered in New Hampshire and a fourth-tier subsidiary of Sabra REIT. LP Keene's limited partner is Sabra Health Care Holdings II, LLC and general partner is Sabra Health Care Holdings I,

---

[2] Like limited liability companies, limited partnerships are citizen of every state of which its owners/members are citizens. *Id.* Corporate citizenship rules do not apply to limited partnerships. *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456-57 (1900).

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE
BN 78122155v1

LLC. Sabra Health Care II, LLC's sole member is Sabra Health Care I, LLC. Sabra Health Care I, LLC's sole member is Sabra Health Care Limited Partnership, whose sole limited partner is Sabra Health Care, L.L.C., and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

10.     Plaintiff L.P.E. is a New Hampshire general partnership and a fourth-tier subsidiary of Sabra REIT. L.P.E.'s partners are Sabra Health Care Holdings II, LLC and Sabra Health Care Holdings I, LLC. Sabra Health Care II, LLC's sole member is Sabra Health Care I, LLC. Sabra Health Care I, LLC's sole member is Sabra Health Care Limited Partnership, whose sole limited partner is Sabra Health Care, L.L.C., and whose general partner is Sabra REIT. Sabra Health Care, L.L.C.'s sole member is Sabra REIT.

11.     Plaintiffs, each of them, are citizens of the states of Maryland and California, by virtue of Sabra REIT's ownership. For the Court's convenience, Plaintiffs' Legal Entity Organizational Chart is attached hereto and incorporated herein by this reference as Exhibit A.

12.     Defendant Genesis Healthcare, Inc. ("Genesis" or "Defendant") is a Delaware corporation with its principal place of business in Pennsylvania.

13.     Plaintiffs are informed and believe, and based thereon allege, that Defendants 1-10 are, and at all times relevant herein were natural persons or legal entities who are, the agents, principals, partners, coconspirators and/or co-venturers of each other, and of defendants, that each of these factiously-named defendants acted within the course, scope and authority of said relationships, and that, as a result, are jointly and severally liable to Plaintiffs for the acts alleged herein.

14.     Plaintiffs allege that they are presently ignorant of the true names and the specific nature of the involvement of each of these fictitiously-named Defendants which is presently unknown to Plaintiffs; when the same can be determined, Plaintiffs will amend their complaint to allege the identity and involvement of those persons and entities.

15.    At all times herein mentioned, each of the defendants named in the caption of this Complaint, which is incorporated herein by this reference, was and is the agent, servant and employee of each of the other defendants, and all of the things alleged to have been done by said defendants were done in the capacity of and as agent of the other defendants.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy, without interest and costs, exceeds $75,000.

17.    The Court has personal jurisdiction over Defendant because, on information and belief it purposefully directed activities toward the State of California, availed itself of the protections of its laws, including by conducting business within Orange County, and contractually consented to be subject to the jurisdiction of this Court.

18.    Venue is proper in the United States District Court for the Central District of California under 28 U.S.C. §§ 1391(b) and 1391(c).

## FIRST CLAIM FOR RELIEF

### Breach of HUD-3 Guaranty

### (By SHCHV Against Defendant)

19.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 18, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

20.    SHCHV is landlord under the lease described by the parties as follows ("HUD-3 Lease")[3]:

> [T]hat certain Master Lease dated as of September 29, 2015, by and among SABRA HEALTH CARE HOLDINGS V, LLC, a Delaware limited liability company ("Landlord"), as landlord, and GENESIS ORION

---

[3] The HUD-3 lease cover three separate properties known as: Mineral Springs, Wolfeboro, and Langdon Place of Nashua.

OPERATIONS LLC, a New Hampshire limited liability company (as "Tenant"), as tenant, as amended by (i) that certain First Amendment to Master Lease dated as of July 29, 2016; (ii) that certain Second Amendment to Master Lease dated as of May 5, 2017; and that certain Third Amendment to Master Lease dated as of March 6, 2018 (as amended, the "*Lease*").

21. Defendant is the Guarantor of the HUD-3 Lease under the corresponding guaranty described by the parties as follows ("HUD-3 Guaranty"):

[T]hat certain Second Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare Group, Inc.), a Delaware corporation ("Guarantor"), as subsequently amended…

A true and correct copy of the HUD-3 Guaranty is attached hereto as Exhibit B.

22. Section 1 of each Guaranty requires Defendant to perform or cause to be performed all provisions of the lease to be performed by the tenant:

Guaranty. In consideration of the benefit derived or to be derived by it therefrom, as to the Lease, effective as of the Effective Date with respect to Obligations (as hereinafter defined) arising from and after the Commencement Date, Guarantor hereby jointly and severally, unconditionally, and irrevocably guarantees (i) the payment when due of all rent and all other sums payable by Tenant under the Lease, and (ii) the faithful and prompt performance when due of each and every one of the terms, conditions and covenants to be kept and performed by Tenant under the Lease, and any and all amendments, modifications, extensions and renewals of the Lease, including without limitation all indemnification obligations, insurance obligations, and all obligations to operate, rebuild, restore or replace any Facility or improvements now or hereafter located at the Facility (collectively, the "Obligations"). In the event of the failure of Tenant to pay any such rent or other sums, or to render any other performance required of Tenant under the Lease, when due or within any applicable cure period, Guarantor shall forthwith perform or cause to be performed all provisions of the Lease to be performed by Tenant thereunder, and pay all reasonable costs of collection and enforcement and other damages that may result from the non-performance thereof to the full extent provided under the Lease. As to the Obligations, Guarantor's liability under this Guaranty is without limit.

**COMPLAINT FOR DAMAGES**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78122155v1

23.   Under Section 3, the parties to each Guaranty agreed that Plaintiffs could proceed with an action against Defendant as Guarantor without first being required to pursue the tenants. In other words, Defendant has primary liability with respect to the tenants' obligations under each lease:

> Primary Liability. The liability of Guarantor with respect to the Lease shall be primary, direct and immediate, and Landlord may proceed against any Guarantor: (a) prior to or in lieu of proceeding against Tenant, its assets, any security deposit, or any other guarantor; and (b) prior to or in lieu of pursuing any other rights or remedies available to Landlord. All rights and remedies afforded to Landlord by reason of this Guaranty or by law are separate, independent and cumulative, and the exercise of any rights or remedies shall not in any way limit, restrict or prejudice the exercise of any other rights or remedies.

> In the event of any default under the Lease, a separate action or actions may be brought and prosecuted against Guarantor whether or not Tenant is joined therein or a separate action or actions are brought against Tenant. Landlord may maintain successive actions for other defaults. Landlord's rights hereunder shall not be exhausted by its exercise of any of its rights or remedies or by any such action or by any number of successive actions until and unless all indebtedness and Obligations the payment and performance of which are hereby guaranteed have been paid and fully performed.

24.   Finally, under Section 15(e) the parties to each Guaranty agreed that if litigation was required to enforce any right or obligation arising under the Guaranty, the prevailing party would be entitled to its attorney's fees and costs:

> In the event of any suit, action, arbitration or other proceeding to interpret this Guaranty, or to determine or enforce any right or obligation created hereby, the prevailing party in the action shall recover such party's reasonable costs and expenses incurred in connection therewith, including, but not limited to, reasonable attorneys' fees and costs of appeal, post judgment enforcement proceedings (if any) and bankruptcy proceedings (if any).

25.   SHCHV has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the HUD-3 Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of

**COMPLAINT FOR DAMAGES**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78122155v1

Defendant.

26.     On June 12, 2023, Plaintiff sent a "Notice of Event of Default, Demand for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under the HUD-3 Lease, for a total amount due in owing of $772,621.99.

27.     Defendant breached the HUD-3 Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the HUD-3 Guaranty.

28.     As a result of Defendant's breach of the HUD-3 Guaranty, SHCHV has been damaged in a sum of not less than $1,415,653.81, which includes base rent, escrows, late fees, and interest through August 1, 2023.

29.     The HUD-3 Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

## SECOND CLAIM FOR RELIEF

### Breach of Bedford Hills Guaranty

### (By SBH Against Defendant)

30.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 29, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

31.     SBH[4] is landlord under the lease described by the parties as follows ("Bedford Hills Lease"):

[T]hat certain Amended and Restated Lease dated as of

---

[4] Formally known as Harborside Northwood, LLC

**COMPLAINT FOR DAMAGES**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78122155v1

November 3, 2010, by and between SABRA BEDFORD HILLS, LLC, a Delaware limited liability company ("Landlord"), as landlord, and HARBORSIDE NEW HAMPSHIRE LIMITED PARTNERSHIP, a Massachusetts limited partnership (as "Tenant"), as tenant, as amended by (i) that certain First Amendment to Amended and Restated Lease dated June 20, 2012; (ii) that certain Second Amendment to Amended and Restated Lease dated December 1, 2012; (iii) that certain Third Amendment to Amended and Restated Lease dated February 2, 2015; (iv) that certain Fourth Amendment to Amended and Restated Lease dated July 29, 2016; (v) that certain Fifth Amendment to Amended and Restated Lease dated May 5, 2017; and (vi) that certain Sixth Amendment to Amended and Restated Lease dated as of March 6, 2018 (as amended, the "*Lease*").

32.   Defendant is the Guarantor of the Bedford Hills Lease under the corresponding guaranty described by the parties as follows ("Bedford Hills Guaranty"):

[T]hat certain Third Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare Group, Inc.), a Delaware corporation ("Guarantor"), as subsequently amended…

A true and correct copy of the Bedford Hills Guaranty is attached hereto as Exhibit C.

33.   The operative terms of the Bedford Hills Guaranty are identical to those of the HUD-3 Guaranty. As such, SBH refers to paragraphs 20 through 24 and incorporates them herein by this reference.

34.   SBH has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the Bedford Hills Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of Defendant.

35.   On June 12, 2023, SBH sent a "Notice of Event of Default, Demand for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not

limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under the Bedford Hills Lease, for a total amount due in owing of $442,239.62.

36.    Defendant breached the Bedford Hills Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the Bedford Hills Guaranty.

37.    As a result of Defendant's breach of the Bedford Hills Guaranty, SBH has been damaged in a sum of not less than $740,740.63, which includes base rent, escrows, late fees, and interest through August 1, 2023.

38.    The Bedford Hills Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

### THIRD CLAIM FOR RELIEF

**Breach of Elms Center Guaranty**

**(By SHCN Against Defendant)**

39.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 38, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

40.    SHCN is landlord under the lease described by the parties as follows ("Elms Center Lease")[5]:

> [T]hat certain Master Lease dated as of November 3, 2010, by and among NEW HAMPSHIRE HOLDINGS, LLC, a Delaware limited liability company ("Landlord"), as landlord, and HARBORSIDE MASSACHUSETTS LIMITED PARTNERSHIP and HARBORSIDE NEW HAMPSHIRE LIMITED PARTNERSHIP, each a Massachusetts limited partnership (individually and collectively, as "Tenant"), as tenant, as amended by (i) that

---

[5] The Elms Center Lease cover three separate properties, but only the Elms Center property is in default of its rental obligations.

certain First Amendment to Master Lease dated as of December 1, 2012; (ii) that certain Second Amendment to Master Lease dated February 2, 2015; (iii) that certain Third Amendment to Master Lease dated July 29, 2016; (iv) that certain Fourth Amendment to Master Lease dated April 1, 2017; (v) that certain Fifth Amendment to Master Lease dated May 5, 2017; (vi) that certain Sixth Amendment to Master Lease dated March 6, 2018; (vii) that certain Seventh Amendment to Master Lease dated April 1, 2018; (viii) that certain Eighth Amendment to Master Lease dated June 1, 2018; (ix) that certain Ninth Amendment to Master Lease dated June 29, 2018; (x) that certain Tenth Amendment to Master Lease dated December 12, 2018; and (xi) that certain Eleventh Amendment to Master Lease dated as of December 21, 2018 (as amended, the "*Lease*").

41.   Defendant is the Guarantor of the Elms Center Lease under the corresponding guaranty described by the parties as follows ("Elms Center Guaranty"):

[T]hat certain Third Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare Group, Inc.), a Delaware corporation ("Guarantor"), as subsequently amended…

A true and correct copy of the Elms Center Guaranty is attached hereto as Exhibit D.

42.   New Hampshire Holdings, LLC is SHCN's predecessor in interest, and assigned all rights, title and interest in the Elms Center Lease and Elms Center Guaranty to SHCN on June 1, 2019.

43.   The operative terms of the Elms Center Guaranty are identical to those of the HUD-3 Guaranty. As such, SHCN refers to paragraphs 20 through 24 and incorporates them herein by this reference.

44.   SHCN has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the Elms Center Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of Defendant.

45.   On June 12, 2023, SHCN sent a "Notice of Event of Default, Demand

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

BN 78122155v1

for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under the Elms Center Lease, for a total amount due in owing of $857,001.84.

46. Defendant breached the Elms Center Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the Elms Center Guaranty.

47. As a result of Defendant's breach of the Elms Center Guaranty, SHCN has been damaged in a sum of not less than $1,827,805.81, which includes base rent, escrows, late fees, and interest through August 1, 2023.

48. The Elms Center Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

## FOURTH CLAIM FOR RELIEF

### Breach of Dover Guaranty

### (By LP Dover Against Defendant)

49. Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 48, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

50. LP Dover is landlord under the lease described by the parties as follows ("Dover Lease"):

> [T]hat certain Amended and Restated Lease dated as of November 3, 2010, by and between LANGDON PLACE OF DOVER, a New Hampshire general partnership ("Landlord"), as landlord, and SUNBRIDGE HEALTHCARE, LLC, a New Mexico limited liability company (as "Tenant"), as tenant, as amended by (i) that certain First Amendment to Amended and Restated Lease

dated June 20, 2012; (ii) that certain Second Amendment to Amended and Restated Lease dated December 1, 2012; (iii) that certain Third Amendment to Amended and Restated Lease dated February 2, 2015; (iv) that certain Fourth Amendment to Amended and Restated Lease dated July 29, 2016; (v) that certain Fifth Amendment t Amended and Restated Lease dated May 5, 2017; and (vi) that certain Sixth Amendment to Amended and Restated Lease dated as of March 6, 2018 (as amended, the "*Lease*").

51.     Defendant is the Guarantor of the Dover Lease under the corresponding guaranty described by the parties as follows ("Dover Guaranty"):

[T]hat certain Third Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare Group, Inc.), a Delaware corporation ("Guarantor")…

A true and correct copy of the Dover Guaranty is attached hereto as Exhibit E.

52.     The operative terms of the Dover Guaranty are identical to those of the HUD-3 Guaranty. As such, LP Dover refers to paragraphs 20 through 24 and incorporates them herein by this reference.

53.     LP Dover has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the Dover Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of Defendant.

54.     On June 12, 2023, LP Dover sent a "Notice of Event of Default, Demand for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under the Dover Lease, for a total amount due in owing of $475,670.98.

55.     Defendant breached the Dover Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the Dover Guaranty.

56.     As a result of Defendant's breach of the Dover Guaranty, LP Dover has

been damaged in a sum of not less than $839,370.82, which includes base rent, escrows, late fees, and interest through August 1, 2023.

57.    The Dover Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

## FIFTH CLAIM FOR RELIEF

### Breach of LP Keene Guaranty

### (By LP Keene Against Defendant)

58.    Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 57, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

59.    LP Keene is landlord under the lease described by the parties as follows ("Keene Lease"):

> [T]hat certain Amended and Restated Lease dated as of November 3, 2010, by and between LANGDON PLACE OF KEENE LIMITED PARTNERSHIP, a New Hampshire limited partnership ("Landlord"), as landlord, and SUNBRIDGE HEALTHCARE, LLC, a New Mexico limited liability company (as "Tenant"), as tenant, as amended by (i) that certain First Amendment to Amended and Restated Lease dated June 20, 2012; (ii) that certain Second Amendment to Amended and Restated Lease dated December 1, 2012; (iii) that certain Third Amendment to Amended and Restated Lease dated February 2, 2015; (iv) that certain Fourth Amendment to Amended and Restated Lease dated July 29, 2016; (v) that certain Fifth Amendment to Amended and Restated Lease dated May 5, 2017; and (vi) that certain Sixth Amendment to Amended and Restated Lease dated as of March 6, 2018 (as amended, the "*Lease*").

60.    Defendant is the Guarantor of the Keene Lease under the corresponding guaranty described by the parties as follows ("Keene Guaranty"):

> [T]hat certain Third Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare

Group, Inc.), a Delaware corporation ("Guarantor"), as subsequently amended…

A true and correct copy of the Keene Guaranty is attached hereto as Exhibit F.

61.    The operative terms of the Keene Guaranty are identical to those of the HUD-3 Guaranty. As such, LP Keene refers to paragraphs 20 through 24 and incorporates them herein by this reference.

62.    LP Keene has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the Keene Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of Defendant.

63.    On June 12, 2023, LP Keene sent a "Notice of Event of Default, Demand for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under the Keene Lease, for a total amount due in owing of $331,106.16.

64.    Defendant breached the Keene Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the Keene Guaranty.

65.    As a result of Defendant's breach of the Keene Guaranty, LP Keene has been damaged in a sum of not less than $588,305.79, which includes base rent, escrows, late fees, and interest through August 1, 2023.

66.    The Keene Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

/ / /

## SIXTH CLAIM FOR RELIEF

### Breach of Exeter Guaranty

### (By L.P.E. Against Defendant)

67.     Plaintiff realleges and incorporates by this reference each and every allegation contained in paragraphs 1 through 66, inclusive, of this Complaint, as though set forth fully in this Claim for Relief.

68.     L.P.E. is landlord under the lease described by the parties as follows ("Exeter Lease"):

> [T]hat certain Amended and Restated Lease dated as of November 3, 2010, by and between L.P.E., a New Hampshire general partnership ("Landlord"), as landlord, and SUNBRIDGE HEALTHCARE, LLC, a New Mexico limited liability company (as "Tenant"), as tenant, as amended by (i) that certain First Amendment to Amended and Restated Lease dated June 20, 2012; (ii) that certain Second Amendment to Amended and Restated Lease dated December 1, 2012; (iii) that certain Third Amendment to Amended and Restated Lease dated February 2, 2015; (iv) that certain Fourth Amendment to Amended and Restated Lease dated July 29, 2016; (v) that certain Fifth Amendment to Amended and Restated Lease dated May 5, 2017; and (vi) that certain Sixth Amendment to Amended and Restated Lease dated as of March 6, 2018 (as amended, the "*Lease*").

69.     Defendant is the Guarantor of the Exeter Lease under the corresponding guaranty described by the parties as follows ("Exeter Guaranty"):

> [T]hat certain Third Amended and Restated Guaranty of Master Lease dated as of May 5, 2017, executed by GENESIS HEALTHCARE, INC. (f/k/a Skilled Healthcare Group, Inc.), a Delaware corporation ("Guarantor"), as subsequently amended…

A true and correct copy of the Exeter Guaranty is attached hereto as Exhibit G.

70.     The operative terms of the Exeter Guaranty are identical to those of the HUD-3 Guaranty. As such, L.P.E. refers to paragraphs 20 through 24 and incorporates them herein by this reference.

/ / /

71.     L.P.E. has performed all the promises, covenants, and conditions it agreed to perform in accordance with the terms of the Exeter Guaranty, except for those promises, covenants, and conditions excused by the acts or omissions of Defendant.

72.     On June 12, 2023, L.P.E. sent a "Notice of Event of Default, Demand for Payment under Lease and Reservation of Rights," to the tenant and Defendant, as Guarantor, indicating that certain events of default had occurred, including, but not limited to, that tenant had failed to pay base rent owed, and, as applicable, real estate tax impounds and other impound deposits required under each lease, for a total amount due in owing of $331,565.78.

73.     Defendant breached the Exeter Guaranty by failing to cure the tenant's default within ten days of service of the notice, as required under Section 9 of the Exeter Guaranty.

74.     As a result of Defendant's breach of the Exeter Guaranty, L.P.E. has been damaged in a sum of not less than $566,131.27, which includes base rent, escrows, late fees, and interest through August 1, 2023.

75.     The Exeter Guaranty provides that Plaintiff is entitled to its reasonable attorneys' fees and related legal expenses, costs of collection, and costs of court, incurred in enforcing its rights thereunder and pursuing this action. Plaintiff has employed the law firm of Buchalter, a Professional Corporation, for the purpose of instituting and prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.     For damages in damages in an amount to be proven at trial, but no less than $5,978,008.12, calculated as follows:

/ / /

/ / /

/ / /

| Guaranty | Amounts Owed Through August 1, 2023 |
|---|---|
| HUD-3 Guaranty | $1,415.653.81 |
| Bedford Hills Guaranty | $740,740.63 |
| Elms Center Guaranty | $1,827,805.81 |
| Dover Guaranty | $839,370.82 |
| Keene Guaranty | $588,305.79 |
| Exeter Guaranty | $566,131.27 |
| **Total** | **$5,978,008.12** |

2.    For pre-judgment interest at the maximum legal rate, as provided by the laws of California;

3.    For reasonable attorneys' fees and costs incurred in this action and as allowed for by contract; and

4.    For such other and further relief as the Court may deem just and proper.

DEMAND FOR JURY TRIAL. Plaintiffs further request a Jury Trial, pursuant to Local Rule 38-1.

DATED:  August 16, 2023

BUCHALTER
A Professional Corporation

By: _____
ERIC KENNEDY
PAUL BELVA
Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES**